## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | |
|---|---|
| **PATRICIA LYNN ALDRIDGE,**    ) | |
| ) | |
|    **Plaintiff,**    ) | |
| ) | |
| **v.**    ) | **Case No.: 6:17-CV-430-VEH** |
| ) | |
| **NANCY A. BERRYHILL,** ACTING    ) | |
| COMMISSIONER, SOCIAL    ) | |
| SECURITY ADMINISTRATION,    ) | |
| ) | |
|    **Defendant**.    ) | |

## MEMORANDUM OPINION

### I.   INTRODUCTION

Plaintiff Patricia Lynn Aldridge ("Ms. Aldridge") brings this action under 42 U.S.C. § 405(g). Ms. Aldridge seeks a review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for social security benefits. Ms. Aldridge exhausted the administrative remedies available before the Commissioner. This case is now ripe for judicial review under section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g).

The Court carefully reviewed the record in this case and **AFFIRMS** the ALJ's decision.

## II.   RELEVANT BACKGROUND

The alleged onset date is April 20, 2014. (Tr. 10). Ms. Aldridge suffers from numerous severe impairments, but the ALJ found that none rendered her disabled. (*Id.* at 12, 20). Ms. Aldridge filed an application for DIB and SSI on August 11, 2014. (*Id.* at 10). The Social Security Administration denied that application on October 28, 2014. (*Id.*). Administrative Law Judge Cynthia G. Weaver held a hearing on September 8, 2015. (*Id.* at 10). The ALJ issued her decision on October 15, 2015, which was unfavorable to Ms. Aldridge. (*Id.* at 21). In that opinion, the ALJ found that Ms. Aldridge did not meet the disability standard at Steps Three and Five. (*Id.* at 13, 20). Ms. Aldridge requested the Appeals Council review the claim. (*Id.* at 1-3). The Appeals Council refused. (*Id.*).

Ms. Aldridge filed her Complaint in the Northern District of Alabama on March 20, 2017. (Doc. 1). She submitted her brief on November 16, 2017, and the Commissioner responded on January 17, 2018. (Docs. 13, 16). Ms. Aldridge never replied to the Commissioner. (*See* CM/ECF).

## III.   STANDARDS

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court.

The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## IV. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the

Regulations promulgated thereunder.[1] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the

---

[1] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## V.    FINDING OF THE ADMINISTRATIVE LAW JUDGE

After considering the record, the ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through the date of this decision.

2.    The claimant has not engaged in substantial gainful activity since April 20, 2014, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.    The claimant has the following severe impairments: degenerative disc disease, obesity, an anxiety disorder, a depressive disorder, and a bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). She would be limited to occupations that do not require climbing of ropes, ladders, or scaffolds. She should avoid areas of concentrated hot temperatures and areas with extreme humidity. She should avoid work with dangerous, moving, unguarded machinery and work at unprotected heights. She can understand, remember, and carry out simple instructions and tasks. She would be limited to jobs involving infrequent and well-explained workplace changes. She would be limited to casual informal interaction with supervisors, co-workers, and the general public. She can concentrate and remain on task for two hours at a time, sufficient to complete an eight-hour workday.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on [REDACTED] and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant

numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 20, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-20) (emphasis omitted).

## VI. ANALYSIS

### A. The ALJ Did Not Commit Reversible Error in her Treatment of Dr. Bentley

Ms. Aldridge's first argument is that "[t]he ALJ [failed] to show 'good cause' for dismissing the opinions and treatment records of Dr. Bentley." (*See* Doc. 13 at 21-31) (emphasis omitted). Specifically, Ms. Aldridge argues that "the evidence bolsters Dr. Bentley's opinions," "the evidence does not support a contrary finding," and "Dr. Bentley's opinions are not conclusory or inconsistent with his medical records." (*See id.* at 24) (emphasis omitted). The Commissioner responds by pointing to portions of the record that show substantial evidence supporting the ALJ's decision. (*See* Doc. 16 at 5-19).In this case, the ALJ gave "considerable weight" to some of Dr. Bentley's opinions and "little weight" to others. (*See* Tr. 18-19). On balance, the Court agrees with the Commissioner.

As an initial matter, the Court agrees with the Commissioner that any conclusion that Ms. Aldridge is disabled or unable to work is something for the ALJ

to determine. (*See* Doc. 16 at 8); *see* 20 C.F.R. §§ 404.1527(d)(1), (d)(2) (discussing what questions are left to the Commissioner).

Ms. Aldridge argues that "Dr. Bentley's medical records clearly demonstrate that Ms. Aldridge continued to suffer from debilitating depression, anxiety, and bipolar disorder over the course of her treatment with him." (*See* Doc. 13 at 25-26). However, as the Commissioner notes, there is substantial evidence in the medical record showing improvement in Ms. Aldridge's condition. (*See* Doc. 16 at 9-10) (citing sources). For example, in January 2015, Ms. Aldridge was in a good mood and working on a quilt. (*See* Tr. 562). In March 2015, she was also in a good mood and felt her medications were working. (*See id.*).

Ms. Aldridge points to Dr. Bentley's notes from May 8, 2013, May 7, 2014, and July 10, 2015 to argue that Dr. Bentley noted her serious symptoms. (*See* Doc. 13 at 26) (citing Tr. 561, 569). Ms. Aldridge also argues that the ALJ "did not adequately consider the medical record" regarding her auditory hallucinations. (*See id.* at 26-27). However, Dr. Bentley's own records indicate that Ms. Aldridge did not suffer from delusions or hallucinations in 2015. (*See* Tr. 569). This appears to be an improvement from 2013 and 2014. (*See id.* at 561). In 2015, Dr. Bentley reported that Ms. Aldridge did not suffer from any suicidal ideation. (*See id.* at 569). On most visits in 2015, Dr. Bentley rated the vast majority of Ms. Aldridge's symptoms as mild or moderate. (*See*

*id.*).

Ms. Aldridge then points to Dr. Vansickle for support. (*See* Doc. 13 at 27). While Dr. Vansickle did note auditory hallucinations prior to her suicide attempts, Dr. Vansickle also noted during the mental status examination that Ms. Aldridge did not have "suicidal . . . ideations" and did not have "any hallucinations." (*See* Tr. at 499). The part where Dr. Vansickle wrote about Ms. Aldridge having hallucinations was in the "history of present illness" section. (*See id.* at 497) (emphasis and capitalization omitted).

Next, Ms. Aldridge argues that the ALJ erred in assigning her "moderate" limitations when the ALJ also noted a GAF score of 30. (*See* Doc. 13 at 27). First, the ALJ is supposed to include evidence that might not support her theory of the case, which appears is exactly what she did here. (*See* Tr. 16). Second, "an opinion concerning GAF, even if required to be accepted as valid, would not translate into a specific finding in regard to functional limitations." *Ward v. Astrue*, No. 3:00-CV-1137-J-HTS, 2008 WL 1994978 (M.D. Fla. May 8, 2008). Additionally, the GAF score of 30 occurred near the beginning of her hospital stay. (*See* Tr. 458). Only a few days later, the hospital noted a generally unremarkable mental status examination. (*See* Tr. 448-49). This included denials of suicidal ideation, hallucinations, or delusions. (*See id.*). The Court could not locate a GAF score in the discharge

diagnoses. (*See id.* at 447). Additionally, even before discharge, the hospital made notations about her finding less stressful employment – not no employment at all. (*See id.* at 450-51).

Also, Ms. Aldridge contests the ALJ's treatment of Dr. Bentley's assigned limitations. (*See* Doc. 13 at 28) (citing Tr. 594). The ALJ found that "they are inconsistent with the objective notes and treatment he provided." (*See* Tr. 19). In support of her argument, Ms. Aldridge points primarily to her own testimony from the hearing and general caselaw. (*See* Doc. 13 at 29-31) (citing Tr. 33-34, 37). However, it is important to remember that the ALJ was able to assign less weight to Dr. Bentley based upon the inconsistencies in his own notes. (*See* Tr. 19). For example, Dr. Bentley noted mostly mild to moderate symptoms in 2015, yet on the medical source opinion form he noted mostly marked or extreme limitations. (*Compare* Tr. 593 *to* Tr. 569). On several visits, Ms. Aldridge seemed generally satisfied with her medication and was able to maintain a "huge garden." (*See id.* at 563, 566, 568).

Ms. Aldridge appears to contest the ALJ's discussion of her weight loss. (*See* Doc. 13 at 28). However, after reviewing the ALJ's opinion, it does not appear that the ALJ used the 10 pound weight loss to assign less weight to Dr. Bentley. (*See* Tr. 17). The ALJ was able to assign less weight to Dr. Bentley through other means, and

that rationale is detailed later in her opinion. (*See id.* at 18-19). The Court can find no error here or in the ALJ's consideration of Ms. Aldridge's obesity as a whole. (*See id.* at 17).

For these reasons, the Court can find no reversible error under Ms. Aldridge's first argument.

### B. The ALJ Committed Harmless Error in not Assigning a Specific Weight to Dr. Miller's Opinion

Ms. Aldridge's second argument is that "[t]he ALJ committed reversible error by failing to assign any weight to the opinions of Dr. Miller." (*See* Doc. 13 at 32) (emphasis omitted). Ms. Aldridge argues that "Dr. Miller's treatment records meet the required standard for medical opinions." (*See id.* at 34-35). The Court notes that the ALJ did not assign any weight to Dr. Miller. (*See* Tr. 17). In response, the Commissioner simply argues that the ALJ did not commit reversible error because Dr. Miller did not offer a medical opinion. (*See* Doc. 16 at 19-23). On balance, it is clear that the ALJ erred here, but her error was harmless.

The Eleventh Circuit has stated the importance of assigning weight to medical opinions:

> Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and

> supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731,
> 735 (11th Cir.1981). Therefore, when the ALJ fails to "state with at least
> some measure of clarity the grounds for his decision," we will decline to
> affirm "simply because some rationale might have supported the ALJ's
> conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.1984)
> (per curiam). In such a situation, "to say that [the ALJ's] decision is
> supported by substantial evidence approaches an abdication of the court's
> duty to scrutinize the record as a whole to determine whether the
> conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting
> *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir.1979)) (internal
> quotation marks omitted).

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The Code of

Federal Regulations defines a medical opinion as "statements from acceptable medical

sources that reflect judgments about the nature and severity of your impairment(s),

including your symptoms, diagnosis and prognosis, what you can still do despite

impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

Medical opinions can be in the form of treatment notes. *See Winschel*, 631 F.3d at

1179.

The Court reviewed the records from Dr. Miller. While the Commissioner

argues that these records are not medical opinions, the Court finds otherwise. Dr.

Miller's medical records reflect judgments regarding Ms. Aldridge's diagnoses. For

example, some of the ailments that Dr. Miller diagnosed were anxiety, arthropathy,

esophageal reflux, lumbago, and hypertension. (*See* Tr. 517). Regarding the symptoms

of Ms. Aldridge's impairments, Dr. Miller stated on June 9, 2015, that "[i]t [referring

to Ms. Aldridge's hip and back pain] is just getting worse." (*See* Tr. 524). Dr. Miller described her condition as "a chronic intermittent issue." (*See id.*). Dr. Miller's records also reflect his judgments about the appropriate course of treatment for Ms. Aldridge's condition. (*See generally* Tr. 515-55). Oftentimes Dr. Miller would adjust her medications, or give her special injections. (*See e.g.*, *id.* at 530-31, 539).

After reviewing the Eleventh Circuit's opinion in *Winschel*, the Court does not agree that Dr. Miller's treatment records do not reflect medical opinions. *See Winschel*, 631 F.3d at 1179. Even the Commissioner relies, in part, on two unpublished Eleventh Circuit opinions applying a harmless error approach to this issue. (*See* Doc. 16 at 22-23) (citing *Colon v. Colvin*, 660 F. App'x 867 (11th Cir. 2016); *Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978 (11th Cir. 2015)). While the *Winschel* court does not mention the harmless error analysis, the harmless error analysis has been part of Eleventh Circuit social security jurisprudence since at least 1983. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). Further, judges from the *Winschel* case sat on both of the panels in *Colon* and *Laurey*. Accordingly, the Court finds it appropriate to apply the harmless error analysis here. The Court is persuaded by the Commissioner's arguments that the error here is harmless. Notably, Ms. Aldridge never filed a reply, meaning that the Commissioner's harmless error arguments stand unrebutted.

First, the Court notes that there are some opinions in Dr. Miller's records that are reserved to the Commissioner. (*See* Tr. 459) ("She is currently disabled psychiatrically."). Specifically, "the Commissioner, not a claimant's physician, is responsible for determining whether a claimant is statutorily disabled." *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877-78 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1)).

Second, the treatment records are fairly clear that Dr. Miller was not actually treating Ms. Aldridge for her mental impairments, but rather he merely noted that another doctor was heading up the psychiatric treatment. For example, there are several notations by her medications list indicating that psychiatry was the one prescribing certain medicine. (*See e.g.*, Tr. 529, 533). Additionally, Dr. Miller noted that "[Ms. Aldridge] is followed by psychiatry." (*See id.* at 554, 459); (*see also id.* at 459) (noting that it was the psychiatrist that "recommended disability"). The Court also reviewed the transcript from the hearing. (*See id.* at 26-49). The transcript indicates that Dr. Bentley was the one treating Ms. Aldridge for her mental impairments; Dr. Miller was not mentioned in the conversations regarding her mental health treatment. (*Cf. id.* at 29, 31, 37). Accordingly, Ms. Aldridge's contention that Dr. Miller was treating her for mental impairments overstates the medical records.

Ms. Aldridge argues that there is no evidence that Tr. 472 was considered by

the ALJ. (*See* Doc. 13 at 35). However, Tr. 472 is a record from November 8, 2013, months before the alleged onset date. (*See* Tr. 472, 10). Additionally, the ALJ noted that Ms. Aldridge had been seeking treatment starting in July 2013. (*See id.* at 17). Importantly, the ALJ noted that in May 2014, Ms. Aldridge's exam was largely unremarkable. (*See id.* at 17, 555). It appears that her primary complaint was about her potassium levels. (*See id.* at 555). Unlike Tr. 472, this record is within the relevant time period. Ms. Aldridge also argues that the ALJ ignored the August 2014 record. (*See* Doc. 13 at 34-35). A review of the ALJ's decision shows otherwise. (*See* Tr. 17) (noting the August 2014 record). The ALJ considered the entirety of Dr. Miller's medical records and noted the "conservative treatment." (*See* Tr. 17).

The Court is unpersuaded by Ms. Aldridge's citation to *Himes*. (*See* Doc. 13 at 35) (citing *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 764 (11th Cir. 2014). First, that case is unpublished. Second, this present case is simply more analogous to *Laurey*. In *Laurey*, the Eleventh Circuit found harmless error when the ALJ did not give a particular weight to a treatment record but clearly considered it. *See Laurey*, 632 F. App'x at 987. Additionally, like in *Laurey*, Dr. Miller's medical opinions here are not particularly explanatory. *See id.* (noting all of the things the treating doctor's letter did not "opine upon"). For example, the Court is hard pressed to find where in these records Dr. Miller opines on what Ms. Aldridge can and cannot do. (*See*

*generally* Tr. 459-76, 515-55). *Even if* the Court were to remand based on the failure to include a particular weight, and *even if* the ALJ found the need to assign less than controlling weight to Dr. Miller (which seems likely given that Dr. Miller's opinions do not give much detail on the severity of Ms. Aldridge's condition or the effect on her capabilities), the ALJ has already noted the generally mild notations in Dr. Miller's records that are "inconsistent with significant physical limitations." (*See* Tr. 17); *see also Lewis v. Callahan*, 125 F.3d 1436, 1442 (11th Cir. 1997) (explaining what "good cause" means) (citing other sources).

For these reasons, the ALJ erred in not assigning a specific weight to Dr. Miller's records, but this error was harmless.

### C. The ALJ Did not Commit Reversible Error in her Evaluation of Ms. Aldridge's Credibility

Ms. Aldridge's last argument is that "[t]he ALJ failed to properly evaluate Ms. Aldridge's credibility." (*See* Doc. 13 at 35-41) (emphasis omitted). The Court disagrees. Here is the Eleventh Circuit pain standard:

> This court has established a three part "pain standard" that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *See Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir.1986). The standard also applies to complaints of subjective

conditions other than pain. *Jackson v. Bowen*, 873 F.2d 1111, 1114 (8th Cir.1989).

> The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987); *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir.1986); *Landry*, 782 F.2d at 1152. If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so. *Hale*, 831 F.2d at 1011. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.1988); *Hale*, at 1054; *MacGregor*, 786 F.2d at 1054.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

In support of her argument that the ALJ erred, Ms. Aldridge points to her own hearing testimony. (*See* Doc. 13 at 36) (citing Tr. 33-35). She believes that her testimony is consistent and that her level of daily activity was misused by the ALJ. (*See id.* at 37-38).

However, "while it is true that daily activity does not automatically disqualify a claimant from disability, it is still proper to consider it." *Riggins v. Berryhill*, No. 4:17-CV-368-VEH, 2018 WL 2130412, *5 (N.D. Ala. May 9, 2018) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); *Holman v. Barnhart*, 313 F. Supp. 2d 1265, 1270-71 (N.D. Ala. 2004)) (footnote omitted); *see also Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (citing 20 C.F.R. § 404.1520(e)) ("The regulations do not . . . prevent the ALJ from considering daily activities at the fourth step of the

sequential evaluation process."). All the ALJ did here was contrast Ms. Aldridge's level of activity with the medical record and her complaints. (*See* Tr. 15, 16, 19). While the ALJ did not recite every fact of Ms. Aldridge's daily acitvities, she noted facts that counseled both in favor, and against, disability. (*See* Tr. 15). The ALJ discussed not only Ms. Aldridge's Functional Report, but also her treatment with Dr. Vansickle. (*See* Tr. 15, 245-52, 496-502). For example, in Ms. Aldridge's own words, she is able to "[t]ake care of my animals, mow, all house cleaning [and] washing." (*See id.* at 247). To be sure, there are instances when Ms. Aldridge has noted limitations. (*See e.g.*, *id.* at 251). However, what the ALJ did was consider these limitations in conjunction with the objective medical record. (*See* Tr. 15).

Ms. Aldridge argues that "[she] simply cannot be cured." (*See id.* at 38). In support, she points to Dr. Bentley's testimony. (*See id.* at 38-39). However, the Court addressed the ALJ's treatment giving less weight to some of Dr. Bentley's medical opinions previously. That same analysis is applicable here.

The Commissioner points to Dr. Simieritsch's and Dr. Vansickle's consultative examinations as support. (*See* Doc. 16 at 27-28). The ALJ considered both of these examinations. (*See* Tr. 18). She gave full weight to Dr. Simieritsch. (*See id.*). As the ALJ noted, Dr. Simieritsch did not say that "[Ms. Aldridge] was significantly limited by any physical impairment." (*See id.*). The ALJ also found that Dr. Vansickle's

"objective findings faile[ed] to support the severity of limitations that would prevent all work activity." (*See id.*).[2] She did this by citing to Dr. Vansickle's own records and Dr. Bentley's records. (*See id.*).

Ms. Aldridge argues that the ALJ failed to consider "whether the combined impairments are disabling." (*See* Doc. 13 at 39) (citing *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987)). However, it appears that the ALJ did just that. (*See* Tr. 19) (noting that the entire record and "the combined effects of the claimant's impairments" were considered). It appears from the face of the ALJ's opinion that she considered the record in its entirety. Additionally, the ALJ did consider evidence that was unfavorable to her ultimate outcome. (*See* Tr. 16). The Court discussed the instance relating to the GAF score earlier in today's opinion. Additionally, the RFC finding notes numerous limitations, including limitations relating to Ms. Aldridge's ability to "carry out simple instructions and tasks" and interact with people. (*See id.* at 14).

---

[2] As the court in *Edelen* noted:

> A consultative examination, that is, a one-time examination by a physician who is not a treating physician, need not be given deference by the Commissioner. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir.1987); *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir.2007) (a consulting physician's opinion "deserves no special weight").

*Edelen v. Astrue*, 711 F. Supp. 2d 1330, 1344 n.15 (N.D. Fla. 2010).

Finally, Ms. Aldridge points to SSR 96-7p. (*See* Doc. 13 at 39-41). SSR 96-7p states several factors the ALJ must consider:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p. However, it appears that the ALJ discussed and considered these factors through the course of her opinion. (*See* Tr. 15-19). Ms. Aldridge has not provided the Court with any citations to the record regarding which factor the ALJ failed to properly consider and what medical records show as much. (*See* Doc. 13 at 40-41). While the ALJ found reason to give less weight to some opinions, those decisions were supported by substantial evidence as noted above. (*See also id.* at 19-20). Accordingly, Ms. Aldridge's third argument also fails.

## VII.   CONCLUSION

The Court declines to state that it would have come to the same conclusions as

the ALJ. However, it is constrained by the standard of review. For the reasons stated

in this opinion, the decision of the Commissioner is due to be, and hereby is,

**AFFIRMED**.

**DONE** and **ORDERED** this the 24th day of July, 2018.

**VIRGINIA EMERSON HOPKINS**
United States District Judge